Whenever you're ready. Good morning, Your Honor. Stuart Lev on behalf of the appellant, Jermont Cox. The big legal question in this case is whether or not the district court applied the appropriate standard in its denial of Mr. Cox's Rule 60b motion. More specifically, the question for this court is to decide is whether the Supreme Court's decision in Martinez v. Ryan was such an extraordinary change in the law that coupled in a multi-factored analysis with other equitable considerations, could there be a case in which 60b relief is appropriate? Why would we have to decide that necessarily? I take it what you think the district court erred in was by reason for the 60b relief, correct? Correct. Okay, but suppose we say, well, district judge may have erred there, maybe he did, maybe he didn't, but the equitable factors just don't add up in this case. And so then we wouldn't have to decide the big question is as to whether there's a per se rule. Well, I think that if you're going to address the equitable factors, then subsilentio, it's just going to create confusion that if you apply a multi-factor test, then you're implicitly are answering that question. Okay, and then in this case, you apply the multi-factors, and how does he win? Well, let me answer this two ways, Your Honor, if I can. The first is to say I think there are a number of factors here that support it. One is the extraordinary change that Martinez v. Ryan affects in habeas litigation. Coleman v. Thompson established law for over 20 years. It set a bright line rule that ineffective assistance of post-conviction counsel can never be caused to overcome a procedural default. We all lived with that for over 20 years, and quite frankly, if I had been before this court prior to Martinez and said, oh, by the way, Your Honors, I think you should create an exception because the Supreme Court's about to do that, you would have raised your eyebrows and rolled your eyes at me and said, no one sees that coming. Martinez came out of the blue, and it created an exception to a doctrine in favor of habeas petitioners. When does the Supreme Court create exceptions to laws that expand habeas petitioners' ability to get an interview? It was extraordinary, so that's one. Let's go back to basics here and what was decided. You said that Judge Brody said never, you know, can never, but Judge Brody's opinion was somewhat inconsistent because the bottom line, indeed the holding, was that Martinez' change in the law without more is looking for more, and the question really here is, what is the more that she was looking for, and did you tell her what it should be? Well, let me answer that first, but then let me have a chance to get back to why I think, although there's some inconsistency in Judge Brody's language, I think it's clear what she did. I think that we lay out, I think, eight different claims against Martinez. Mr. Cox's – What did you tell her? What did you tell Judge Brody? I think we told Judge Brody about Mr. Cox's diligence. I think we told Mr. Judge Brody about how Martinez was closely – There was a Martinez claim, which is to say that he has a Martinez claim and he's been diligent in bringing it, period. And he's been diligent in bringing it. He didn't try to argue how substantial the claim was on the merits, and she didn't even deal with it. She didn't deal with that, and that's correct. And we did refer that it's at least substantial enough that the last time we were before the court in this case, we did have a certificate of appealability on a procedural issue, which we couldn't have gotten under the law from the U.S. Supreme Court if there hadn't been some substantial, some arguable merit to the ineffective assistance of counsel claims. So I think there's an implicit assumption that there is merit to these claims, although Judge Brody clearly never specifically went to. And we did lay out in our motion, referring her back to the prior pleadings in the case, what we thought were the merits to those claims. But the reality is, this was – Martinez was decided in what, 2012? 2011. 2012 was decided. And then this was decided in 2013, and there was not a lot of experience with the issue at that time. Correct. Well – There has been more experience now. But if we go right back to Martinez, they described, the prisoner must demonstrate the ineffective assistance of trial counsel claim is a substantial one. That is, he must demonstrate that the claim has no merit. Now, you know – And I think that the claim has merit, is what you're saying. So when it's without more, maybe she thought that hadn't been demonstrated. Or maybe there was other more she was looking for. I think where I'm going to suggest is maybe, given the advance in the law and the inconsistency of the opinion, and perhaps it should go back for more, for some development as to – Because this is Martinez plus 60B. Correct. Well, are we going to apply the Lasky factors from what, 1986 here in this case? Do we need them all, maybe a couple of them? What needs to be shown? How would she define the without more that was lacking? And I agree with you completely, Judge Barry, that remanding this for more specific findings as to the substantial merit or lack thereof of the claim – Don't do it, though. And of the factors – She defines that this was not a claim within the Supreme Court in Martinez's definition of substantial. If it was not a substantial one, that's game set in magic, isn't it? Correct. But let me say, the little related claims, they have been disposed of already by the Court of Appeals. Just one of the little related claims have been disposed of. There were a number of areas in which both Kimberly Little and her sister Mary could have been impeached. I think the ruling of the Court of – the ruling was previously that the Little's testimony was not central, and therefore, things – if that's true, then the other claims, even though not directly disposed of, are kind of gone, aren't they? They're kind of gone, except for this, that they would have to be factored in to a cumulative prejudice analysis, because we look at ineffective assistance of counsel claims in light of the cumulative prejudice that they caused. What I thought when I looked at what was going – what was happening here that really wasn't dealt with was his claim that he should have been allowed to testify. But, you know, there was already in evidence the idea that this was a – his claim that this was an accidental shooting. And so I didn't understand exactly why that was the substantial failure of the counsel. Well, I think there were two issues that were involved. One was rebutting the Little's testimony about his role as a runner or a lookout in the drug operation, and also about the accidental shooting. And I think his testimony could be quite important as to the accidental shooting because of this essential problem from his statement. His statement to the police about an accident is very undeveloped. There's no explanation for how there might have been multiple shots. The police officers didn't say to him, well, Mr. Cox, you say it's an accident, but he shot three times. You know, how do you explain that? That explanation, which became the heart not only of the district attorney's closing argument in the case, but of the issue of prejudice when we were up here before in the circuit as to how accident, you know, can be in light of the firearms analysis testimony. Testimony which now, based on new evidence that isn't involved in this, is subject to question, but also might be a factor that Judge Brody or the district court should be as aware of and should look into within the context of the 60B. So I think Judge Barry has the right idea that what we really need from the district court is rather than this court jump to an issue that the district court didn't decide. Well, wait, we have to, she assumed, I think it was assumed, that because the motion is denominated as a 60B motion, an extraordinary circumstance must be shown. The Supreme Court in Martinez, which was a straight habeas case, didn't require an extraordinary circumstance. Is that, if an extraordinary circumstance is required here merely because this is a 60B motion, perhaps the substantial claim of ineffectiveness satisfies, in and of itself, satisfies that. I don't think any one factor is ever going to satisfy the extraordinary circumstances. Maybe there'll be a case where there's something, some new evidence or some fraud on the court or something that could. But I think in a case like this, it will be a combination of factors. It'll be Martinez plus the substantial merit. I think that you're right, that the merit of the underlying claims could be both a and a factor in the 60B analysis. Well, it would have to be, wouldn't it? I would think so. That's what Martinez is all about. That's what it requires. I would think that's correct. Assuming that the procedural niceties have been there. It's the first claim. Yeah. And if, in fact, the claims are not substantial, that's grounds for finding both it's not an exceptional circumstance and that Martinez doesn't apply. I would agree with that. Wilson B. Fenton back in 82 said, you know, that a change in the Supreme Court law or the law of our circuit can be a extraordinary circumstance. But is any case ever of our circuit ever held that a change in the law is an extraordinary circumstance? Not that I'm aware of. The case law in the circuit has recognized that that'll be a rare circumstance when a change of case law can constitute an extraordinary circumstance. But I'm not aware of a particular case that relies solely on a change of law. There is the Smith case that we cite that that was really a district court decision that relied upon a change of law that was more timely, I think. It came up. Well, Smith v. Holtz. Yeah. That was where somebody got changed three days before the district court ruled and they were just going. Right. So it's a little different. I think that's probably as close as there is in the circuit. But I recognize that there's the general proposition that it will be rare, but not impossible. The interesting thing is, I've played around with in my thinking, it seems to me Judge Brody found that the fact of change of law, period, whatever it is, without more is not an extraordinary circumstance as opposed to a change of can never be. I think it's just, you have to put some meat on the bare bones of the change of law to decide whether it's an extraordinary circumstance. If all you do is say, well, here, there's a change of law. We're not going to tell you what it is. That's an extraordinary circumstance. Well, I think we know what the change of law is. So let me go back. I don't. I'm sorry? I thought Coleman left some more holes than you seem to think. Well, maybe so. And maybe Your Honor's aware of case law that I'm not, or that I haven't found. But from my practice in habeas, and the practice I know in this circuit, is there were no exceptions to Coleman. OK. How about, if the only chance you had to raise ineffective assistance was in the collateral proceeding, and ineffective assistance could not apply, even if that was your very first chance, that's it.  What was the rule? The rule was that if your chance to raise ineffective assistance of trial counsel, the first chance was in post-conviction, and your post-conviction lawyer defaulted on that claim. When you came to federal court and tried to raise the claim, that claim was defaulted, and the court could not reach the merits of that claim. OK. I see you're getting a nod. So it sounds to me like she doesn't think there's any exception at the time of Coleman. Yeah. Until Martinez. Well, there was a little bit of a change, wasn't there, before Martinez? I don't think so. OK. OK. But can I go back to what Judge Brody did? Because I agree there's that without more language at the very end. But the way she sets up her opinion, she says there's a split of authority on these issues from the circuits, that the Fifth Circuit has advanced a bright-line categorical rule, that Martinez can never be a change of circumstance, an extraordinary circumstance. And the Ninth Circuit has recognized the possibility that it could be applying a multi-factor test. That's what Judge Brody said. Judge Brody said, I followed the Fifth Circuit. But the Fifth Circuit didn't say what she said. The Fifth Circuit, Adams, our precedents hold that a change in decisional law after the entry of judgment does not constitute exceptional circumstances and is not alone grounds, alone grounds for relief from final judgment. I mean, without more. That's what Adams said. But that's certainly not the way Judge Brody explained it. And maybe she's reading it that way. Maybe she's reading it the way Your Honor is and says there are no more exceptional circumstances. I've looked at the other factors in this case, and I don't see anything more. But it's certainly not clear. And so at a minimal, I think that the, well, I think not just at a minimal. I think the proper remedy in this case under any circumstance, and that's the remedy we asked for, is to send it back to Judge Brody. There are tremendous, this is an aggravating factor in a death sentence. Yes. A capital case. So it's not, this is, we take every case seriously, but we really have to take this one seriously. Martinez would, if the case is in the right procedural form, essentially the defendant should have a first bite at the apple. That's what Martinez says. Not sure, often unclear, district court opinion if one can say that that's been done. Yeah. And that's what Martinez says. Martinez is an equitable. It's an equitable ruling. It describes itself as an equitable rule. Ruling. An equitable ruling designed to protect a bedrock constitutional right. So I think we examine the equities, and that's what I'm asking for here. Thank you. Thank you very much. Did I forget at the beginning to reserve time? We'll give you three minutes. Thank you. Is that what, is that what we reserved, Gina? Okay. Thank you, Your Honor. I apologize. No, no problem at all. Ms. Lorber. Good morning, Your Honors. May it please the court, Molly Lorber on behalf of the Philadelphia District Attorney's Office for appellees. The district court did not abuse its discretion in ruling that the Supreme Court's decision in Martinez without more, as Judge Barry says, was not the type of extraordinary circumstance that all alone could justify reopening a long final habeas decision under. Is there any tension with that statement with regard to what our court said 32 years ago in the Wilson v. Fenton case, that a change of law, either the Supreme Court or our circuit, can, not necessarily, but can be the basis to determine if you have extraordinary circumstances under Rule 60B? Well, I think, Your Honor, that you can read it either way. You could read it that there's tension there, or I think one way of looking at this is that the Supreme Court's decision in Gonzales provides kind of an analytical shortcut. You mean the 2005 Gonzales v. Crosby? Seven years before Martinez, and Martinez didn't even mention Gonzales. With all due respect, I think you're trying to turn this into a Gonzales case. Well, respectfully, Your Honor, it's not just me turning it into a Gonzales case. Numerous other courts of appeals have read it as a Gonzales case, and that's because the similarities are quite apparent on the face of it. Gonzales was also about a change, a U.S. Supreme Court that changed the procedural landscape of habeas review, and whether that new procedural landscape could apply retroactively to a habeas petitioner via a Rule 60B motion. And what the Supreme Court said in Gonzales was, no, it cannot. Rule 60B. It found in Gonzales there was not a habeas claim because it was not a successive petition. And then it said it was a 60B attack on a statute of limitations issue, which is an extraordinary circumstance under 60B. It could have been raised on direct appeal. That's what Gonzales did. Well, respectfully, what the Supreme Court said in Gonzales is that 60B is not a vehicle for making changes in the law retroactive, especially where the change in the law at issue is one governing the procedural rules of habeas review. And that's exactly what Martinez does. Martinez, look, all procedural rules have the potential to affect bedrock constitutional rights when you're talking about habeas review. Those are the only claims that are available to petitioners on habeas review is constitutional claims. So any time you have a procedural rule in habeas, what it does is it governs who gets review of a constitutional claim and who doesn't. And in Gonzales, the procedural rule change at issue was one affecting the statute of limitations. So because of the way the statute of limitations was interpreted by the 11th Circuit at the time that Gonzales filed his original habeas petition, the reading was, we can't review your claims on the merits. We're sorry. Goodbye. You're time barred. When he filed his 60B motion after the Supreme Court decided the Artoos v. Bennett case, it turned out that the 11th Circuit had been wrong, according to the Supreme Court, about how to apply the statute of limitations. And so under that new analysis, he would have been timely and he would have received merits review of his constitutional claims. But the Supreme Court said, look, our interests in finality and respect for state court judgments override these fairness considerations. There has to be an end to this somewhere. And you can't use Rule 60B to make procedural rule changes retroactive to you. If the district court had considered additional equitable factors here, like what the 9th Circuit has done, would that have been an abuse of discretion? Um, you know, I don't think it would have been an abuse of discretion to consider them. Quite frankly, the district court's opinion was succinct. And I think you could arguably say that it was vague. As Judge Barry points out, she did say without more. So that does give an inkling that perhaps she was looking for more and looking to consider more and just didn't feel that it had been presented to her. So potentially, I think I mean, I would argue that what the district court did was she said, I'm being presented with a change in the procedural law governing habeas review. And and that is the circumstance which I am told justifies reopening habeas litigation, according to the Supreme Court in Gonzales, which she did cite in her opinion. That's not extraordinary enough. I wanted to go back to the Coleman situation, because I thought in Gonzales, there was the statute of limitations was subject to a circuit split. It could have been, you know, this issue was like out there, that could have been raised on the appeal. And your opponent said, and you seem to shake your head in agreement, that we all understood Coleman to be a hard and fast rule with no exceptions. You just don't have ineffective assistance at council claims regarding collateral proceedings. So I think we're nodding your head. And I want to know, because it sounds to me like Gonzales thinks that, well, maybe if there was like a shaky rule out there, you're responsible for raising it. And if there's a less shaky rule, you're not responsible. So I think weird question, but you can answer it. So I'll try my best to answer it, Your Honor. And one way of answering it is to just start off by saying that these procedural habeas rules are a mess. They're very complicated. They're tough to understand for everyone. They're tough for Sue and I to understand. And this is all we do. You've heard Irwin Chemerinsky say that understanding habeas is like going through the seven layers of hell. I have not heard that, Your Honor. But I'm going to share that when I go back to the office. So the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT, the 1996 amendments to the habeas statute, one of the things that they did was change the timeliness requirements. So the rulings, the body of law that has grown up around what qualifies as an exception to the time bar is separate from the body of law that has grown up around what qualifies as exceptions to the rules about exhaustion in state court and procedural default. So I think that in Gonzalez and in Artuz, which is the underlying change of the law, that was an interpretation of the timely filing requirement. And there was no ineffectiveness situation at issue in Artuz. What it was, was in Artuz, the question was, if you file your state collateral review petition, in Pennsylvania it's a PCRA, if you file your PCRA petition and the state court rules, we can't review any of the claims in your petition because they're all waived, right? It's not saying your petition was untimely. It's saying, that would be a Pace v. DiGuglielmo situation. It's saying your claims are all barred to us for other reasons. They're waived. Then the question was, does that petition count as one that is properly filed such that it can toll the AEDPA statute of limitations? 11th Circuit said no. Other circuits said yes. Later on, the Supreme Court clarified in Artuz that the other circuits had happened to be correct in that instance. Just because the state court rules that your claims are unreviewable, doesn't, for whatever procedural reason, each individual claim is not reviewable, doesn't mean that your petition was not properly filed. It's complicated. I know, but it seems to me that Gonzalez was faced with a situation where some of the circuits had interpreted this properly and there was some responsibility to raising this issue on appeal. Whereas an ineffective assistance to counsel claim, he said, and you said, not by nodding, that Coleman was clear, Martinez was an earth-shaking change. There was no circuit that said, this is really unclear as to what you can do and therefore, everybody's responsible for raising this. He's saying this was earth-shaking, and I didn't hear you say this wasn't earth-shaking. So I will agree with you. I don't know if I would use the word earth-shaking or not, but it was a big change in the habeas jurisprudence. Now, I think that my response to that and the Supreme Court's response via Gonzalez is, it's not whether the change is significant or not that we care about. The difference is procedure versus substance. In Gonzalez, they drew a distinction between when there is a change in the underlying criminal law under which you were convicted, they said there, okay, when there's a change in the substance of criminal law, maybe there's gonna be a case where that kind of thing will allow for 60B relief. But when we're talking about trying to make a procedural rule retroactive to somebody via a 60B motion, no, no, we're not gonna allow that. So the Ninth Circuit sort of suggests in its Lopez decision, and they're the only circuit thus far that has said, okay, maybe under the right brew of circumstances, Martinez could qualify as an extraordinary circumstance. In Lopez, they said, this guy doesn't meet it, but maybe under the right circumstances. And they said, it's so significant that the Ninth Circuit said, it's such a significant change in the law, we're gonna say that maybe sometimes with other factors, it could give rise to relief. What factors would you say, if we were to decide that you need some more beyond the change of the law, what would satisfy you? Well, personally, I think that the way to read Gonzalez is to say, there's almost no situation in which... How about under Martinez? I understand Your Honor's question. So the question is, could the more that Judge Brody was looking for be satisfied by the merits of the underlying ineffective assistance of counsel? Or merits or lack thereof. Or lack thereof. So I think that there's a problem with that approach. And the problem with that approach is that Gonzalez has to mean something, right? Because then what you're doing is you're basically, you're reviewing the merits of the claims on the 60B motion when Gonzalez says, no, don't review the merits of the claims. The whole point is, you can't review the merits of these claims by retroactively applying a new procedural rule to you. So I think that I would say that the more shouldn't be the underlying merits of the claims. It should be some other type of extraordinary circumstance like, you know, I don't know. I would leave it to my opponent to say what that type of circumstance would be. Maybe an aggravating circumstance in a capital case. Just theoretically. But then why doesn't Martinez, if Gonzalez is so important, why hasn't Martinez even mentioned it? Well, Martinez wasn't about 60B. No, he was a habeas. Right. The question wasn't directly before the court. And I think that's why Martinez didn't say it. It wasn't directly before the court. But you're really saying that this Martinez case is all about Gonzalez. And one would think the Supreme Court might have said something. Well, I don't. Respectfully, I don't think I'm. I don't think what I'm saying is that it's all about Gonzalez. How many habeas petitioners have exhausted all their remedies under habeas? And, you know, this is a whole successive petition routine. And they come, they have to come back in under 60B. You know, is this not, this is certainly not beyond the realm. Well, I think what we have is a retroactivity problem, Your Honor. Right. So the question is, the Supreme Court didn't say in Martinez, oh, and by the way, we are specifically making Martinez retroactive. So that's a problem when you're in the 60B context. And I think until the Supreme Court says, oh, no, no, and what we meant to say was Martinez is retroactive. You have a real problem as any kind of 60B litigant, including a habeas petitioner. Well, Supreme Court, it may not be a retroactivity problem. Because despite what you two have agreed on, it may have been that Coleman did not, in itself, close off all possibilities. And the Supreme Court in Martinez was just recognizing some possibilities that Coleman hadn't dealt with. And there is language in Martinez to suggest that, Your Honor. There is language in Martinez. Because they don't want to say we were wrong before. Yes. OK. Precisely. They were very careful in their holding in Martinez. They tried to draft it, I think, arguably, as narrowly as they could draft it under the circumstances. They said, look, it's only applicable in very specific circumstances. It's only applicable where state petitioners were forced and had no other choice but to delay their claims to collateral review. Well, then they kind of loosened that up a little, too. In Trudino, yes. So maybe the answer is this is not retroactivity. This was always the rule, that you could always do this, just that nobody recognized. I don't know, Your Honor. I can't speak to that. I'd have to ask the Supreme Court justices. Well, there you go. Give us another day, Kay. So I see that my time is up. I also just wanted to say this is probably my last time before Your Honor says I'm leaving the DA's office. And I just wanted to thank you. It's been such a pleasure. Where are you going? The US Attorney's Office in New Jersey. Oh, good luck. Thank you very much. Well, you can come back here once you're there. I'll do my best there. They've asked me to do trial work. So it might be a while. Well, you did trial. Come back here anyway. I recommend the appeal work there. That's where I started out. Oh, did you, Your Honor? And I remember making my last argument to this court before I went on the district court. So I wish you all kinds of luck. It's a great office. Thank you very much, Your Honor. Thank you, Ms. Shalev. Let me start with Gonzales, which I just don't read as broadly as my colleague here does. I don't think Gonzales made any broad proclamations about procedure versus substance and when 60B is allowed and when it isn't. I think Gonzales was a case-specific case that looked at this statutory dispute. It was a dispute of statutory interpretation in R2s about the meaning of the words properly filed that had split the circuits. And the court said us resolving a circuit split about statutory interpretation is not extraordinary. And besides, Gonzales wasn't diligent because he had the opportunity to appeal that issue and he didn't. And so it's not a flat-out straight rule, but it looks both at the specific circumstances of Gonzales's case and the specific nature of the change of law. I want to say to you, Judge Rastrani, that Mr. Cox tried to raise in his initial litigation of these claims a cause and prejudice that collateral counsel at PCRA had been ineffective. And the magistrate had rejected that because of Coleman and a COA had been denied on that issue. So whether or not there was some exception to Coleman that could have been uncovered, it wasn't in this case that he tried to pursue this issue and he couldn't. And he was shut down by Coleman. So those are really the two major points. Lastly, I'd say, this is not really a question about retroactivity because it's not that Martinez is retroactive to every habeas petitioner who wants to apply it. It's a question of exceptionality and how do we determine whether there's an exceptional case that should fall under this rule. And lastly, I'd say that I think the one thing we can all agree on, their office, my office, and the court, that habeas rules are the seven layers of hell. It's a rare subject of agreement. Thank you very much. Thank you to both counsel for exceptionally well-presented arguments. And I would ask if we could have a transcript of part of this oral argument and if the government would pick up the cost for that. Thank you very much. And we'll call our last. Okay, last case.